IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAIME S.,[1]                                                    Case No. 6:19-cv-01424-SB

                Plaintiff,                        **OPINION AND ORDER**

      v.

ANDREW M. SAUL, Commissioner of Social
Security,

                Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Jaime S. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear

Plaintiff's appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions

of 42 U.S.C. § 405(g). For the reasons explained below, the Court affirms the Commissioner's

decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in March 1976, making her forty years old on April 1, 2016, her alleged disability onset date.[2] (Tr. 23, 85, 109.) Plaintiff has a ninth-grade education and past relevant work as a gas station attendant. (Tr. 23, 41, 213.) In her application, Plaintiff alleged

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which [she] filed [her] application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted). Plaintiff protectively filed her application on August 25, 2016. (Tr. 18.)

disability due to carpal tunnel syndrome, posttraumatic stress disorder ("PTSD"), bipolar disorder, insomnia, anxiety, and depression. (Tr. 86, 110.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on April 19, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 16.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on August 15, 2018. (Tr. 37-66.) On November 7, 2018, the ALJ issued a decision denying Plaintiff's application. (Tr. 16-24.) On July 16, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-7.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those

PAGE 3 – OPINION AND ORDER

steps, the claimant is not disabled. *Id*. at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 16-24.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2016, the alleged disability onset date. (Tr. 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[O]besity; depression; anxiety; PTSD; and bipolar disorder[.]" (Tr. 18.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 19.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "a range of light work," subject to these limitations: (1) Plaintiff can engage in "no more than occasional balancing, crawling, stooping, crouching, or kneeling," (2) Plaintiff "must avoid climbing ladders, ropes, or scaffolds," (3) Plaintiff can engage in no more than frequent "handl[ing] with the bilateral upper extremities," (4) Plaintiff can "understand, remember, and carry out no more than short and simple instructions involving simple work-related judgments and decisions," and (5) Plaintiff "can tolerate no more than frequent contact with co-workers, supervisors, or the general public." (Tr. 20.) At step four, the ALJ concluded that Plaintiff could not perform her past relevant work. (Tr. 22-23.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she

could perform, including work as a laundry folder, deflector operator, and bakery worker. (Tr. 23-24.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide: (1) specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; (2) germane reasons for discounting the lay witness testimony provided by Plaintiff's mother, Kristin L.; and (3) specific and legitimate reasons for discounting the opinion of Plaintiff's treating psychologist, Jason Quiring, Ph.D. ("Dr. Quiring"). (Pl.'s Opening Br. at 5-6, 13.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record. Accordingly, the Court affirms the Commissioner's denial of benefits.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

**B.    Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 21, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

**1.    Improvement in Plaintiff's Condition**

The ALJ discounted Plaintiff's symptom testimony based on record evidence showing that Plaintiff's mental health symptoms improved with treatment and sobriety. (*See* Tr. 21, the ALJ found that Plaintiff's statements were not entirely consistent with the record evidence and noted that Plaintiff's "condition had improved with prescribed medication"; *see also* Tr. 22, the ALJ reiterated that Plaintiff's mental functioning improved with treatment and sobriety). This is a clear and convincing reasons for discounting a claimant's symptom testimony. *See, e.g.*, *Shultes v. Berryhill*, 758 F. App'x 589, 592-93 (9th Cir. 2018) (holding that the ALJ satisfied the

clear and convincing reasons standard and noting that the ALJ appropriately discounted the claimant's symptom testimony "based on medical evidence showing improvement in his mental health symptoms with treatment" (citing *Tommasetti*, 533 F.3d at 1040)).

Plaintiff argues that substantial evidence does not support the ALJ's decision to discount her testimony based on evidence showing improvement in her mental health symptoms with treatment and sobriety. According to Plaintiff, the record evidence "documents [only] waxing and waning mental symptoms consistent with [her] allegations of disability." (Pl.'s Opening Br. at 11.)

It is well settled that ALJs may not discount a claimant's testimony based on a few isolated examples of improvement. *See generally Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence [in mental health cases], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Here, however, Plaintiff's objections to the ALJ's finding fail to demonstrate reversible error because they amount to advocating for alternatives to the ALJ's rational interpretation of the record, and because the ALJ's finding is supported by substantial evidence (i.e., more than a mere scintilla of evidence but less than a preponderance). *See Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore d[id] not demonstrate error"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (stating that "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld"); *Wilcox ex rel. Wilcox v. Colvin*, No. 13-2201-

SI, 2014 WL 6650181, at *5 (D. Or. Nov. 24, 2014) (explaining that the claimant's "alternative interpretation of the evidence [was] insufficient to overturn the ALJ's findings").

It was reasonable for the ALJ to discount Plaintiff's symptom testimony based on record evidence showing improvement in her mental health symptoms with treatment and sobriety.[3] The following record evidence demonstrates that the ALJ's interpretation of the record was rational:

- June 4, 2014: Plaintiff's provider noted that Plaintiff smokes marijuana on a daily basis, she advised Plaintiff not to use drugs or alcohol, and she expressed concern about Plaintiff self-medicating. (Tr. 303-04; *see also* Tr. 432-34, 676, Plaintiff has a history of drug abuse and "heavy" alcohol abuse).

- March 1, 2015: Plaintiff reported that she was in "recovery from methamphetamine for many years," and Plaintiff's provider stated that Plaintiff's "toxicology screen [was] positive today for meth" and Plaintiff's complaints of anxiety "are likely related to her methamphetamine use."[4] (Tr. 622-23.)

- April 1, 2016: Plaintiff alleged the onset of disability. (Tr. 193.)

---

[3] The record also demonstrates that Plaintiff's recurrent knee injury improved with physical therapy. (*See, e.g.*, Tr. 643-44, reflecting that Plaintiff reported that her knee improved with physical therapy but she reinjured her knee in February 2017, and Plaintiff's provider noted that Plaintiff exhibited full strength on exam but nevertheless referred Plaintiff back to physical therapy).

[4] During the administrative hearing held on August 15, 2018, Plaintiff, who was forty-two years old at the time, informed the ALJ that "[w]hen [she] was very young maybe under 25 from age 13 to [her] 20s [she] did meth [but she could not] even remember the last time [she] did it." (Tr. 49.)

- May 12, 2016: During a treatment session with Dr. Quiring, Plaintiff reported that she was feeling better, was taking more walks with her mom and dog, was planning to "go help at a local volunteer organization," "felt much better and had a sense of purpose when she . . . ha[s] a regular daily activity," and believed that "if she can keep adding new fun activities to her life she will continue to feel better." (Tr. 439.)

- June 10, 2016: Dr. Quiring noted that Plaintiff was improving and Plaintiff reported that she was feeling better, had "been going out and doing some more things with friends," had been organizing her and her mother's affairs, and "recently got to go house sit at a large house in the woods[.]" (Tr. 447.)

- June 13, 2016: Plaintiff reported that her medication "helped with sleep and daytime anxiety." (Tr. 449.)

- July 25, 2016: Plaintiff reported that she was feeling depressed, but she had started exercising more often and wanted to "do it more regularly." (Tr. 458.)

- August 19, 2016: Plaintiff informed Dr. Quiring that she had "recently went to a Scandinavian festival, which is her heritage[,] and she and her mother had a nice time, both planning the event and participating." (Tr. 467.)

- September 15, 2016: Plaintiff reported that she was feeling "okay" and "less depressed," and she recently set "boundaries with a friend of hers who was drinking in her presence." (Tr. 471.)

PAGE 9 – OPINION AND ORDER

- September 29, 2016: During a treatment session with Dr. Quiring, Plaintiff reported that she had "been going [out] spending time with friends more often than usual" and was "going to continue to spend time with her friends doing outdoor activities." (Tr. 582.)

- December 2, 2016: Plaintiff reported that she established a new relationship with a man and had "one activity plan with [him]." (Tr. 592.)

- January 13, 2017: Plaintiff reported that she was about to "be[] a caregiver for a friend of hers who has recently broken both of his legs in different events." (Tr. 602.)

- February 3, 2017: Plaintiff reported that she contacted "several fitness centers, including the YMCA, [but] was not able to afford the membership at any." (Tr. 611.) Plaintiff's provider noted that Plaintiff was concerned about her weight and Plaintiff's bipolar medication could have a "possible impact . . . on her weight," but Plaintiff "did not want to stop [the bipolar medication due to] its effectiveness of reducing her racing thoughts." (Tr. 613.)

- March 30, 2017: Plaintiff reported that she celebrated her birthday with her mother by "going to see beauty and the beast as well as eating at a sushi burrito[] stand that she enjoys." (Tr. 665.)

- May 8, 2017: Plaintiff reported that she was feeling depressed, but she also reported she had "a recent episode of drinking" and wanted to "quit altogether." (Tr. 667.) Dr. Quiring advised Plaintiff to "limit time drinking

with a friend of hers who brings beer over and wants to drink together."
(Tr. 667.)

- May 12, 2017: Plaintiff reported that she was "more irritable lately" but had started drinking alcohol again, and that her alcohol use was triggered by the presence of the friend Plaintiff "took in while he recuperated from leg injuries." (Tr. 669; *see also* Tr. 58, August 15, 2018, Plaintiff testified that her friend with broken leg continues to live with her). Plaintiff reported that her friend drank "an 18-pack every day" and she had "gradually spent more and more time drinking until it got 'out of control.'" (Tr. 669.) As a result, Plaintiff asked to be referred to "formal [treatment] for substance [abuse]." (Tr. 669.)

- May 15, 2017: Plaintiff's provider noted that he informed Plaintiff about the "importance of abstinence" and discussed Plaintiff's "desire to lose weight and alcohol being complicating." (Tr. 673.)

- June 12, 2017: Plaintiff's provider noted that Plaintiff reported that she "voluntarily enrolled in an alcohol rehab program 3 weeks ago, and so has not had any alcohol since then." (Tr. 676.) Plaintiff's provider also noted that Plaintiff had lost weight, which he attributed primarily to "alcohol cessation." (Tr. 677.)

- June 26, 2017: Plaintiff reported that she was participating in outpatient treatment "3 days per weeks, 3 hours per day," she had not used alcohol in twenty days, and "Naltrexone ha[d] reduced her cravings for alcohol." (Tr. 680-81.) Plaintiff also reported that she was "not hanging out with

drinking friends." (Tr. 681.) Plaintiff's provider stated that Plaintiff's

abuse of alcohol had been "gradually improving." (Tr. 681.) Plaintiff's

provider added that Plaintiff's mood, affect, behavior, judgment, thought

content, cognition, and memory were normal, and Plaintiff's thought

process was logical, linear, goal-directed, and within normal limits.

(Tr. 681.)

- August 14, 2017: Plaintiff's provider noted that Plaintiff "goes to day

  treatment for alcohol rehab religiously but feels the need to have more

  intense treatment," and therefore Plaintiff elected to do a ninety-day

  "residential alcohol treatment program starting in about a month."

  (Tr. 687.)

- September 8, 2017: Plaintiff reported that she "stopped taking her

  clonazepam in preparation for the [residential treatment] program" and

  Plaintiff's provider noted that "a letter to that effect (benzodiazepines will

  not be prescribed) ha[d] been faxed to [the treatment program] per

  [Plaintiff's] request." (Tr. 690.) Plaintiff also reported that she "smokes

  marijuana twice a day . . . [but was] trying to stop using." (Tr. 690.)

- September 25, 2017: Plaintiff's provider stated that Plaintiff was

  "currently in [an] inpatient [rehabilitation] center to stop nicotine, alcohol,

  and [marijuana]," and "feeling very happy with her decision" to pursue

  treatment. (Tr. 693.)

- October 20, 2017: Plaintiff reported that she completed her residential

  treatment program and was "now attending an out-patient program, 5 days

per week for 5 hours each day." (Tr. 696.) Plaintiff's provider noted that
Plaintiff's thought process was logical, linear, goal-directed, and within
normal limits and Plaintiff's speech, behavior, judgment, thought content,
cognition, and memory were normal. (Tr. 696-97.)

- December 15, 2017: Plaintiff reported that she continued to refrain from
  alcohol use but does "smoke marijuana 'occasionally.'" (Tr. 701.)

- January 30, 2018: Plaintiff reported that she was attending nutrition
  classes because she was "interested in bariatric surgery," and she "walks
  her dog 4 times weekly, about 10 minutes at a time, usually 20 minutes
  total per week." (Tr. 704.)

- March 9, 2018: Plaintiff reported that her "grandmother bought her a
  vehicle and that she and her mother [were] planning a driving trip to 'the
  Redwoods,'" and she was not using alcohol but was "smok[ing] marijuana
  nightly." (Tr. 707.)

- April 20, 2018: Plaintiff reported that she was "doing well," she was
  "planning a monthly trip to the Oregon coast," and she and her mother
  "took a road trip to the Redwoods and thoroughly enjoyed themselves."
  (Tr. 715.)

- May 15, 2018: Plaintiff's provider noted that Plaintiff continued to have
  some "difficulty managing her mood and anxiety," but she had "made
  considerable progress on her issues involving alcohol and other drugs."
  (Tr. 721.)

Given this evidence, it was reasonable for the ALJ to discount Plaintiff's testimony based on record evidence showing improvement in her mental health symptoms with treatment and sobriety. *See Barnes v. Berryhill*, No. 16-cv-3047, 2017 WL 3387797, at *4 (S.D. Cal. Aug. 4, 2017) ("The ALJ properly inferred . . . that 'Plaintiff's symptoms are not as disabling as alleged, because they improved during periods where she was compliant with treatment and sobriety.'") (citation omitted); *Burdo v. Colvin*, No. 13-cv-00763, 2013 WL 6008500, at *4 (W.D. Wash. Nov. 13, 2013) ("The ALJ was entitled to infer . . . that Plaintiff's symptoms are not as disabling as alleged, because they improved during periods where she was compliant with treatment and sobriety.").

## 2.    Contradictory Medical Evidence

The ALJ also discounted Plaintiff's symptom testimony based on contradictory medical evidence. (*See* Tr. 21-22, the ALJ found that Plaintiff's statements were not entirely consistent with the record evidence and noted that Plaintiff exhibited logical thought process and normal memory, insight, judgment, concentration, and speech during examinations, Plaintiff's providers described Plaintiff's cognition and memory as "normal" and noted that Plaintiff was "'very pleasant' with logical, linear, and goal-directed though process," and Plaintiff's clinical findings are "not indicative of a debilitating mental condition"; *see also* Tr. 22, the ALJ referred to Plaintiff's "relatively benign clinical findings"). It is appropriate for an ALJ to discount a claimant's symptom testimony based on contradictory medical evidence. *See, e.g.*, *Smith v. Berryhill*, 752 F. App'x 473, 475 (9th Cir. 2019) (holding that the ALJ satisfied the clear and convincing reasons standard and noting that the ALJ appropriately discounted the claimant's testimony based on, among other reasons, the presence of "contradictory medical evidence" in the record).

Plaintiff argues that the ALJ's reliance on contradictory medical evidence was misplaced. In support of this argument, Plaintiff notes that she reported that she was depressed and anxious, suffered from panic attacks and insomnia, and had difficulty socializing and leaving the house, and that her providers noted that she at times exhibited loud and pressured speech and was depressed, anxious, "and/or" agitated. (*See* Pl.'s Opening Br. at 11-12, stating that the ALJ discounted Plaintiff's symptom testimony based on "normal" objective findings and citing these reports).

In the Court's view, Plaintiff's interpretation of the record is rational, but the ALJ's interpretation of the record is also rational and, therefore, must be affirmed. To be sure, the record includes numerous examination findings that appear inconsistent with debilitating mental health symptoms.

- May 12, 2016: Dr. Quiring's mental status examination revealed that Plaintiff was cooperative, fully oriented, and well-groomed, Plaintiff's thought process was logical, Plaintiff's speech was normal, and Plaintiff denied any suicidal ideation. (Tr. 439.)

- May 27, 2016: Dr. Quiring's mental status examination showed that Plaintiff was cooperative, fully oriented, and well-groomed, Plaintiff's thought process was logical, Plaintiff's speech was normal, and Plaintiff denied any suicidal ideation. (Tr. 445; *see also* Tr. 447-48, 454, showing that Dr. Quiring's made the same findings on June 10, 2016 and July 7, 2016).

- June 23, 2016: Plaintiff's examination revealed that she was not nervous, anxious, or hyperactive and her mood, affect, speech, behavior, judgment,

thought content, cognition, and memory were normal. (Tr. 449.) Plaintiff's examination was also negative for "suicidal ideas, hallucinations, behavioral problems, confusion, self-injury, dysphoric mood, decreased concentration and agitation." (Tr. 449.)

- July 26, 2016: Plaintiff's examination was negative for "agitation, behavioral problems, confusion, decreased concentration, dysphoric mood, hallucinations, self-injury and suicidal ideas." (Tr. 459.) Plaintiff's provider also noted that Plaintiff's mood, affect, speech, behavior, judgment, thought content, cognition, and memory were normal. (Tr. 459-60.)

- September 21, 2016: Plaintiff's examination was negative for "agitation, behavioral problems, confusion, decreased concentration, dysphoric mood, hallucinations, self-injury, sleep disturbance and suicidal ideas." (Tr. 473.) Plaintiff's provider also noted that Plaintiff was not hyperactive or nervous/anxious and Plaintiff's mood, affect, speech, behavior, judgment, thought content, cognition, and memory were normal. (Tr. 473.)

- November 2, 2016: Plaintiff's provider noted that Plaintiff's examination was negative for "agitation, behavioral problems, confusion, decreased concentration, dysphoric mood, hallucinations, self-injury and suicidal ideas," and Plaintiff's mood, affect, speech, behavior, judgment, thought content, cognition, and memory were normal. (Tr. 589.)

- January 13, 2017: Dr. Quiring's mental status examination revealed that Plaintiff was cooperative, fully oriented, and well-groomed, Plaintiff's

thought process was logical, Plaintiff's speech was normal, and Plaintiff denied any suicidal ideation. (Tr. 602-03.)

- February 3, 2017: Plaintiff's provider noted that her examination was negative for agitation, dysphoric mood, and hallucinations, and Plaintiff's mood, affect, speech, behavior, judgment, thought content, cognition, and memory were normal. (Tr. 612.)

- March 1, 2017: Plaintiff's examination was negative for "agitation, behavioral problems and confusion." (Tr. 652.)

- June 26, 2017: Plaintiff's provider noted that Plaintiff's mood, affect, behavior, judgment, thought content, cognition, and memory were normal, and Plaintiff's thought process was logical, linear, goal-directed, and within normal limits. (Tr. 681.)

- October 20, 2017: Plaintiff's provider noted that Plaintiff was nervous/anxious and exhibited a "dysphoric mood," but Plaintiff's thought process was logical, linear, goal-directed, and within normal limits and Plaintiff's speech, behavior, judgment, thought content, cognition, and memory were normal. (Tr. 696-97.)

- December 15, 2015: Plaintiff's mental status examination showed that her speech was "somewhat pressured, which is normal for [her]," with some "spontaneous elaboration," but it also showed that Plaintiff's mood was "good with ranging affect," Plaintiff was well-groomed and dressed appropriately, Plaintiff's speech rate, rhythm, volume, and articulation were within normal limits, Plaintiff's rate of thought was within normal

limits, and Plaintiff's thought process was logical, linear, and goal-directed. (Tr. 701.)

- May 15, 2018: Dr. Quiring noted that Plaintiff continued to have some "difficulty managing her mood and anxiety," but she had "made considerable progress on her issues involving alcohol and other drugs." (Tr. 721.) Dr. Quiring also noted that Plaintiff's mental status examination revealed that Plaintiff was cooperative, well-groomed, and "[o]riented 4X," Plaintiff's affect was appropriate, and Plaintiff's motor behavior, speech, thought, perception, memory, insight, judgment, and concentration were within normal limits. (Tr. 719.)

Given the evidence described above, the Court concludes that it was reasonable for the ALJ to discount Plaintiff's symptom testimony on the ground that it conflicted with the medical evidence.

### 3.    Conclusion

For these reasons, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the claimant's] testimony as not credible"); *Johaningmeier v. Berryhill*, No. 3:16-cv-2027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing with the Commissioner that the ALJ did not commit harmful error in discounting the claimant's testimony because "the ALJ provided at least one other clear and convincing reason").

II.    **LAY WITNESS TESTIMONY**

   A.    **Applicable Law**

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

   B.    **Analysis**

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's mother, Kristin L. As explained below, the Court disagrees.

The ALJ addressed Kristin L.'s thirty-party adult function report on page twenty-two of her decision. The ALJ noted that she accounted for some of the social and intellectual deficits that Kristin L. identified in formulating Plaintiff's RFC. (Tr. 22.) The ALJ, however, declined to account for all of Kristin L.'s testimony because the longitudinal record revealed that Plaintiff's

"mental functioning ha[d] improved with appropriate [mental health] treatment and sobriety."
(Tr. 22.)

Plaintiff argues that the ALJ committed reversible error in discounting Kristin L.'s testimony because "the record does not support" the ALJ's finding that her mental functioning improved with treatment and sobriety. (Pl.'s Opening Br. at 14.) Instead, according to Plaintiff, the record shows only that her mental health symptoms waxed and waned. (Pl.'s Opening Br. at 14.)

As explained and demonstrated above, substantial evidence supports the ALJ's finding that Plaintiff's symptoms improved with mental health treatment and sobriety. Plaintiff has therefore failed to demonstrate that the ALJ erred in discounting Kristin L.'s testimony. However, even if the ALJ erred in discounting Kristin L.'s testimony, any error was harmless because Kristin L.'s testimony was substantially similar to Plaintiff's testimony, which the ALJ appropriately discounted. *See Blacksher v. Berryhill*, 762 F. App'x 372, 377 (9th Cir. 2019) ("Ms. Blacksher's testimony was substantially similar to that of her son. Because the ALJ provided clear and convincing reasons for discounting Blacksher's statements, 'it follows that the ALJ also gave germane reasons for rejecting' Ms. Blacksher's similar testimony, and so any error was harmless.").

## III.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine*, 574 F.3d at 692 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)).

"An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### B.      Analysis

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for discounting the opinion of her treating psychologist, Dr. Quiring. The Court disagrees.

Dr. Quiring completed a medical source statement on August 10, 2018. (Tr. 733-37.) Dr. Quiring reported that he has treated Plaintiff twice a month since April 2016, he diagnosed Plaintiff with bipolar disorder and anxiety, and Plaintiff's clinical findings and reported symptoms include depressed mood, loss of interest and pleasure in activities, significant weight gain, psychomotor retardation, fatigue, feelings of worthlessness, diminished ability to think and concentrate, fear of social interactions, restlessness, irritability, and muscle tension. (Tr. 733-34.) Dr. Quiring also opined that Plaintiff (1) "would not be able to come into contact with the public

or work in close coordination with supervisors or co-workers and manage criticism"; (2) "would

not be able to be present at work on a daily basis without excessive absences from work"; (3)

"would be limited in her ability to perform complex tasks or follow detailed instructions"; and

(4) suffers from marked difficulty understanding and remembering complex instructions,

carrying out complex instructions, and making judgments on complex work-related decisions.

(Tr. 734.)

The ALJ assigned only "partial weight" to Dr. Quiring's August 2018 medical source

statement:

> Notwithstanding the relatively benign clinical findings reported above,
> Dr. Quiring recently reported that the claimant's mental health problems would
> likely cause 'excessive absences' and prevent her from seeking or maintaining
> gainful employment. While the claimant continues to experience symptoms of
> depression and anxiety, the record does not reasonably support Dr. Quiring's
> [opinion]. The treatment provider previously noted that the claimant had enjoyed
> planning and attending a local festival, and that she presented as cooperative and
> fully oriented within a clinical setting. More recent evidence found at Exhibit B9F
> [i.e., Tr. 647-724] describes her as 'very pleasant' and 'healthy.' Only one month
> before Dr. Quiring's August 2018 statement, another treatment provider observed
> that the claimant's behavior, speech, thought process, perception, memory,
> insight, judgment, and concentration were all within normal limits. Because of
> these inconsistencies, the undersigned givens only partial weight to Dr. Quiring's
> functional assessment.

(Tr. 22) (internal citations omitted).

Plaintiff argues that the ALJ erred in discounting Dr. Quiring's opinion because the

record "lacks any details about the 'planning' involved [with the festival], as well as any

circumstances around her ability to attend," and because her ability to attend the festival "during

a brief period of improved symptoms . . . does not demonstrate sustained improvement." (Pl.'s

Opening Br. at 8.) Plaintiff also notes that "'it is error for an ALJ to pick out a few isolated

instances of improvement over a period of months or years and to treatment them as a basis for

concluding a claimant is capable of work.'" (Pl.'s Opening Br. at 8, quoting *Garrison*, 759 F.3d at 1017).

The Court notes that the ALJ addressed and discounted Dr. Quiring's opinion near the very end of her decision, after detailing the evidence that supported her medical improvement finding and explaining that Plaintiff's mental functioning improved with treatment and sobriety. Thus, it is reasonable to infer that the ALJ cited Plaintiff's ability to plan and attend a Scandinavian festival as but one example of evidence showing that Plaintiff's mental health symptoms, such as social anxiety, improved with treatment and/or sobriety. Furthermore, even if the record lacks any details about how much planning Plaintiff did, it was reasonable for the ALJ to suggest that a claimant's ability to attend a public festival is inconsistent the opinion of a physician who opined that the claimant could not have contact with the public.

Plaintiff also argues that the ALJ erred in discounting Dr. Quiring's August 2018 opinion based on a different provider's examination on July 23, 2018—which revealed that Plaintiff's behavior, speech, thought process, perception, memory, insight, judgment, and concentration were all within normal limits—because that same provider also noted that Plaintiff had regressed, increased the dosage of Plaintiff's antidepressant, and stated that Plaintiff reported feeling "manic." (Pl.'s Opening Br. at 9, citing Tr. 729-30). From Plaintiff's perspective, the July 23, 2018 treatment record is "entirely consistent with Dr. Quiring's conclusions." (Pl.'s Opening Br. at 9.)

With respect to the July 23, 2018 treatment note, Plaintiff reported feeling distressed due to an upcoming surgery and "especially because [she] 'ha[d] to give up . . . marijuana,'" a drug that Plaintiff's providers repeatedly advised her to avoid since it negatively impacted her progress and mental health symptoms. (Tr. 729.) Nevertheless, Plaintiff's mental status

examination was largely unremarkable. Furthermore, as described above, the record includes numerous examinations that were largely unremarkable, many of which the ALJ described in detail before discounting Dr. Quiring's opinion. Accordingly, the ALJ did not commit reversible error in discounting Dr. Quiring's opinion based on conflicting evidence.

Finally, Plaintiff argues that the ALJ erred in discounting Dr. Quiring's opinion because the ALJ cited a cardiologist's opinion, not a mental health provider's opinion, that Plaintiff was "very pleasant" and "healthy." (Pl.'s Opening Br. at 9.) Even assuming the ALJ erred in discounting Dr. Quiring's opinion on this ground, any error harmless was in light of the other specific and legitimate reasons that the ALJ provided for discounting Dr. Quiring's opinion. *See Brendan J.G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-742-SI, 2018 WL 3090200, at *10 (D. Or. June 20, 2018) ("[B]ecause the ALJ gave at least one specific and legitimate reason for discounting Dr. Richardson's opinion, the Court upholds the decision to do so."); *Hoge v. Berryhill*, No. 16-cv-00718-AC, 2017 WL 4881586, at *9 (D. Or. Oct. 27, 2017) ("[B]ecause the ALJ provided at least one specific and legitimate reason, supported by the evidence, to accord little weight to Dr. Freed's medical opinion, the ALJ did not err in doing so."); *Samraing K. v. Comm'r of Soc. Sec.*, 18-01110, 2019 WL 4594598, at *2 (W.D. Wash. Sept. 20, 2019) ("The ALJ gave at least one specific and legitimate reason for discounting Dr. Mashburn's opinion and substantial evidence supports that reason; the Court holds that under these circumstances, the ALJ did not err.").

For all of these reasons, the Court concludes that the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Quiring's opinion. *See Phelps v. Berryhill*, 714 F. App'x 628, 630 (9th Cir. 2017) (holding that the ALJ satisfied the specific and legitimate reasons standard and noting that the ALJ appropriately

discounted a treating physician's opinion on the ground that it was inadequately supported by clinical findings, inconsistent with the physician's "own treatment records," and inconsistent with "the objective medical evidence as a whole"); *Maestas v. Berryhill*, 692 F. App'x 868, 869 (9th Cir. 2017) (holding that the ALJ satisfied the specific and legitimate reasons standard and noting that the physician's opinion was inconsistent with medical "reports showing overall improvement").

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 11th day of December, 2020.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge